UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM WAYTENA, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>THE CINCINNATI INSURANCE COMPANY,<br><br>    Defendant. | Case No. 25-cv-04450-RS<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS MOTION** |

## I. INTRODUCTION

Plaintiffs William Waytena and Leeann Lahren (the "Plaintiffs") have sued their home insurer, Defendant Cincinnati Insurance Company ("CIC"), for breach of insurance contract, promissory estoppel, and breach of the duty of good faith and fair dealing. The parties now bring cross-motions for partial summary judgment regarding the breach of contract claim, disputing whether the insurance policy at issue conclusively covers or excludes (1) loss from rainwater caused by defective construction, an excluded cause under the policy, and (2) living expenses due to related fungi growth. Finding that the Policy conclusively provides coverage for both, the Plaintiffs' motion is granted, and Defendant's is denied.

## II. BACKGROUND

### A. Storms and Related Claims

In late December 2022 and early January 2023, San Francisco experienced intense winter storms, leading to significant water intrusion into Plaintiffs' home and fungi damage. The damage to Plaintiffs' home was also traced to defective construction, including failed waterproofing and

improperly sealed fasteners around balcony railings. Plaintiffs' construction company made initial repairs under warranty, as their insurance policy required to mitigate further damage, and Plaintiffs' filed a homeowner insurance claim with CIC.

In March 2023, CIC's independent claims adjuster inspected the damage and reported to CIC that it "all appears to arise from the original construction of the home" with some damage "occur[ing] as the result of leaks due to inadequate waterproofing" and some as "the result of the homebuilder's repair… and remediation… under warranty." Dkt. 16-2, Cook Declaration, Ex. 2. Internal CIC emails show that after CIC Assistant Vice-President/Capstone Claims Manager Pieter Kes reviewed this report, he wrote to his supervisor: "I think we [CIC] would have coverage for the resulting interior water damage from the rainstorm but the damage from the contractor walking up and down the steps concerns me." *Id.*, Ex. 3. The supervisor subsequently entered a claim note that stated, "We owe for the resulting damages from the newest water intrusion and associated EMS. We will send partial denial as contractor/workmanship issues not covered." *Id.*, Ex. 4.

A few weeks later, in April 2023, the CIC supervisor on Plaintiffs' case wrote to Plaintiffs, explaining CIC needed additional time to finalize its coverage decision and that, per California law, they would contact Plaintiffs within 30 days with an update. *Id.*, Ex. 5. In May 2023, Plaintiffs received a call from CIC, assuring them that CIC would extend coverage for any "rainwater intrusion" damage inside the home. The conversation was confirmed with an email, reading, "As we discussed, your policy with us does provide coverage for any resulting water damage from rainwater intrusion that occurred on or about January 20, 2023." *Id.*, Ex. 6. The email "reserve[d] [CIC's] rights to amend any positions regarding coverage should new information be identified," namely a pending Engineer report that CIC expected that week. *Id.* The email also explained that the "policy does not provide coverage for" the "areas of concern regarding either poor workmanship or construction defects" that Plaintiffs had brought to CIC's attention "in addition to the resulting water damages." *Id.*

The next day, CIC sent a letter (the "May 2023 Letter") to Plaintiffs, reading, "As previously stated, water damage sustained at all four floors due to water intrusion is covered. Please refer to the engineer report previously sent to you," which found the water intrusion

ORDER RE CROSS MOTIONS FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 25-cv-04450-RS
2

consistent with the construction conditions. *Id.*, Ex. 9. The letter warned Plaintiffs that,

> [CIC] will continue to investigate this incident to determine the facts and to obtain information on any potential claims that may arise as a result of the incident. [CIC] does so with a full reservation of its rights under the law and under the insurance policy. The Cincinnati Insurance Company does not waive its rights to disclaim coverage for indemnity of the claims arising from this incident. Our right to disclaim coverage for indemnity of the above incident is not limited to the reasons set forth above and shall include any and all grounds for non-coverage that may be revealed through our investigation.

*Id.*

Cal. Code Regs. tit. 10 § 2695.7(b) and (c) required CIC to alert Plaintiffs within 40 days of its coverage decision or, if CIC required more time to make a final decision, to send update letters, including written notice of the need for additional time and details specifying the additional information needed, every 30 days until a final decision was made. Instead, Plaintiffs did not hear formally from CIC again until September 2024, twenty months after CIC sent the May 2023 Letter notifying Plaintiffs that "damage sustained at all four floors due to water intrusion is covered." Dkt. 16-2, Cook Declaration, Exs. 8, 9.

In the intervening time before September 2024, CIC paid out $272,423 for interior repairs and over $500,000 on loss of use benefits to Plaintiffs pursuant to its initial coverage decision. Internal TCIC emails, however, show that, by November 2023, CIC was concerned about the "exposure of the loss so far." *Id.*, Ex. 10. They wanted to have the "Engineer back out regarding [new claims about the wall] in order to be completely certain on coverage," and emphasized the position that CIC was "ONLY going to pay for resulting damages." *Id.* In January 2024, the engineer returned to Plaintiffs' property. In February 2024, he finalized a report describing three scopes of repair, each of which would cost CIC millions of dollars. *Id.*, Ex. 11.

However, in September 2024, CIC sent a letter (the "September 2024 Letter") informing Plaintiffs that coverage for *all* damage was denied due to an exclusion in Plaintiff's insurance policy with CIC (the "Policy") related to faulty workmanship. *Id.*, Ex. 9. "CIC has concluded that the observed water damage was the result of defective construction in the building envelope, a cause of loss which is excluded under the Policy. Regretfully, there is no coverage available under

the Policy for damage caused by defective construction, and the insureds' claim is therefore denied." *Id.*

**B. The Policy**

The Policy is an "all-risk" policy, meaning it generally provides coverage unless specifically excluded in the Policy. Specifically, Section I of the Policy,[1] "PROPERTY COVERAGES," sets out that it "insure[s] direct 'physical loss' " to Covered Property that occurs during the coverage term "unless the 'physical loss' is… [e]xcluded in Section I – Property Coverages, C. Section I - Exclusions" or "[l]imited in Section I, A.3.c. Special Limits of insurance." Dkt. 1-1, Ex. 1A, the Policy, Section I, B.

The "Section I Exclusions" include " 'physical loss' caused by… [w]ear and tear, marring, deterioration; [m]echanical breakdown, latent defect, inherent vice or any quality in property that causes it to damage or destroy itself;" and "[f]aulty, inadequate or defective… [d]esign, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction" or "[m]aterials used in repair, construction, renovation or remodeling." *Id.*, Section I, C.1.f (the "Defective Construction Exclusion"). "Under Section I, C. – Exclusions, Paragraphs 1. and 2., any ensuing 'physical loss' to Covered Property… not precluded by any other provision in this policy is covered." *Id.*, Section I, C.3. (the "Ensuing Loss Provision").

Under the "Coverage D – Loss of Use" section in Section I, the Policy covers additional living expenses when a covered "physical loss" "makes the resident premises uninhabitable." *Id.*, Section I, D. The Policy excludes coverage for loss caused by mold, *see id.*, Section I, C.4.j, but by endorsement provides limited coverage for mold abatement. Dkt. 21-2, Belshaw Decl., Ex. A at 6. When "physical loss" or costs are caused by a covered cause of loss, the insurer will cover, up to a certain maximum, "physical loss" "caused by 'fungi', wet or dry rot, or bacteria", the cost to remove "'fungi,' wet or dry rot, or bacteria," the "cost to tear out and replace any part of the building… as needed to gain access to the 'fungi,' wet or dry rot, or bacteria," the "cost of testing

---

[1] Unless otherwise defined, capitalized terms here have the same meaning as in the Policy, filed with this court as Exhibit 1A of Dkt. 1-1.

ORDER RE CROSS MOTIONS FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 25-cv-04450-RS
4

air or property," and "up to 20% of the Coverage A limit of insurance for… ensuing 'fungi', wet or dry rot, or bacteria" for reasonable living expenses and the "fair rental value of that part of the 'residence premises' rented to others." *Id.*

### C. Litigation

In April 2025, Plaintiffs sued for breach of insurance, promissory estoppel, and breach of good faith and fair dealing in California state court. Defendant removed to federal court based on diversity jurisdiction. Plaintiffs moved for partial summary judgment on their first cause of action, the breach of contract claim, on the ground that damage from the rainwater, even if it entered the home due to defective construction, is covered under the Policy as an ensuing physical loss. Defendant disagrees and has brought a cross motion for partial summary judgment on the same claim on directly opposite grounds—that Plaintiffs' rainwater damage was not covered by the Policy.

### III. LEGAL STANDARD

### A. Summary Judgment

Summary judgment is appropriate when the pleadings, discovery, and affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact is one that could reasonably be resolved in favor of the nonmoving party, and which could "affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the burden of proof to "make a showing sufficient to establish ... the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). If the movant succeeds in demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Id.* at 322 n.3. *See also* Fed. R. Civ. P. 56(c)(1)(B).

Evidence must be viewed in the light most favorable to the nonmoving party and all justifiable inferences must be drawn in its favor. *See Anderson*, 477 U.S. at 255. It is not the task of the court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (citation omitted). Rather, the nonmoving party has the burden of

identifying, with reasonable particularity, the evidence that precludes summary judgment. *Id.* If the nonmoving party fails to make this showing, "the moving party is entitled to a judgment as a matter of law." *Celotex*, 477 U.S. at 322.

### B. Breach of Contract

The elements of a cause of action for breach of contract are (1) the existence of the contract, (2) the plaintiff's performance or excuse for nonperformance, (3) the defendant's breach, and (4) resulting damages to the plaintiff. *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011) (citing *Reichert v. Gen. Ins. Co. of Am.*, 68 Cal. 2d 822, 830 (1968)). An insurance contract is breached when an insurer denies a claim it is required to cover by the policy. In California, the insured has the initial burden of showing that its claim falls within the scope of the insuring provisions of the policy. *See Royal Globe Ins. Co. v. Whitaker*, 181 Cal.App.3d 532, 537, 226 Cal. Rptr. 435 (Cal.Ct.App.1986). If the insured satisfies this initial burden, then the burden shifts to the insurer to come forward with evidence that one or more policy exclusions apply to prevent coverage. *See id.*

Interpretation of a contract, such as an insurance policy, is a question of law amenable to summary judgment if (1) the contract is not ambiguous; or (2) the contract is ambiguous, but no parol evidence is admitted, or the parol evidence is not in conflict. *Walter E. Heller W., Inc. v. Tecrim Corp.*, 196 Cal. App. 3d 149, 158 (1987). If "a material fact necessary to interpret the contract" is disputed, summary judgment is inappropriate. *Essex Walnut Owner L.P. v. Aspen Specialty Ins. Co.*, 335 F. Supp. 3d 1146, 1150 (N.D. Cal. 2018) (citation omitted).

The fundamental goal of contract interpretation is to give effect to the mutual intention of the parties. Cal. Civ. Code § 1636. *See also Hess v. Ford Motor Co.*, 27 Cal. 4th 516, 524 (2002). "When a contract is reduced to writing, the parties' intention is determined from the writing alone, if possible," Cal. Civ. Code § 1639, provided that the language is "clear and explicit, and does not involve an absurdity," *id.* § 1638. *See also Revitch v. DIRECTV, LLC*, 997 F.3d 713, 717 (9th Cir. 2020). The words of a contract are generally interpreted in their "ordinary and popular sense." Cal. Civ. Code § 1644. A contract also may be explained "by reference to the circumstances under

ORDER RE CROSS MOTIONS FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 25-cv-04450-RS
6

which it was made, and the matter to which it relates." *Id.* § 1647.

A contract is ambiguous when "on its face it is capable of two different reasonable interpretations." *Republic Bank v. Marine Nat'l Bank*, 45 Cal. App. 4th 919, 924 (1996). "If the terms of a promise are in any respect ambiguous or uncertain, [the contract] must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it." *Id.* § 1649. In determining whether an ambiguity exists, i.e., whether contractual language is "reasonably susceptible" to the interpretation urged by a party, the court should provisionally receive all credible evidence concerning the parties' intentions. *Guidiville Bank of Pomo Indians v. NGV Gaming, Ltd.*, 531 F.3d 767, 787-88 (9th Cir. 2008). If an ambiguity is found to exist, extrinsic evidence is admitted to aid in interpreting the contract. *Id.*

## IV. DISCUSSION

### A. The "Ensuing Loss" Provision Covers Rainwater Damage

Plaintiffs argue the interior rainwater damage at issue, which they stipulate for the purposes of their motion was caused entirely by water entering through defective construction,[2] is covered by the Policy as a matter of law under the Ensuing Loss Provision. Defendant disagrees. CIC argues that the Ensuing Loss Provision does not provide coverage when an excluded peril is the proximate cause of loss and relatedly that the defective construction was the proximate cause of all of Plaintiffs' losses. Accordingly, in Defendant's view, the Policy's Defective Construction Exclusion precludes coverage of all the rainwater damage.

### i. Efficient Proximate Cause Doctrine and Ensuing Loss Provisions

When a loss is caused by separate and independent perils, coverage determinations

---

[2] In their opposition to Defendant's motion for partial summary judgment (MSPJ), Plaintiffs argue there is a genuine issue of material fact as to whether defective construction caused all of the rainwater damage. *See e.g.,* Dkt. 23 at 7–8. Defendant opposes this as an improper expansion of their argument in light of Plaintiffs' stipulation in Plaintiffs' MSPJ. *See* Dkt. 27 at 2. However, Plaintiffs may make this stipulation for the purposes of their motion while arguing otherwise in opposing Defendant's motion. In other words, Plaintiffs may properly make both arguments: one, even if all of the rainwater damage were caused by defective construction, they should win because the Policy covers such loss, and, two, if the court does not agree with that reading of the Policy, Defendant cannot win because there is a genuine issue of material fact as to the cause of all of the rainwater damage.

implicate the insurance policy's ensuing loss provisions, to the extent the policy has them, and the efficient proximate cause doctrine. *See Acme Galvanizing Co. v. Fireman's Fund Ins. Co.* ("*Acme*"), 221 Cal. App. 3d 170, 179–80, 270 Cal. Rptr. 405 (Ct. App. 1990) ("We interpret the ensuing loss provision to apply to the situation where there is a 'peril,' i.e., a hazard or occurrence which causes a loss or injury, separate and independent but resulting from the original excluded peril[.]"); *Tento Int'l, Inc. v. State Farm Fire & Casualty Co.* ("*Tento*"), 222 F.3d 660, 662 (9th Cir. 2000) (" 'For the efficient proximate cause theory to apply,… there must be two separate or distinct perils which could each, under some circumstances, have occurred independently of the other and caused damage.' ") (cleaned up) (*citing Pieper v. Commercial Underwriters Ins. Co.*, 59 Cal.App.4th 1008, 1020, 69 Cal. Rptr.2d 551, 557 (1997)). *See also Sapiro v. Encompass Insurance* 221 F.R.D. 513, 522 (N.D. Cal. 2004) (citing *Acme*, 221 Cal App. 3d at 180) ("California's courts have long defined an 'ensuing loss' as a loss 'separate' and 'independent' 'from [an] original peril.' "). When an ensuing peril is "not [itself] an excluded one," the loss from the ensuing peril is generally considered covered by the ensuing loss provision. *See Acme*, 221 Cal. App. 3d at 180. *See also* California Rutter Practice Guide: Insurance Litigation Ch. 6B-F, Exclusions From Coverage (An ensuing loss provision "operates as an *exception* to the [policies'] exclusions," "*restor[ing] coverage*" for losses that flow ('ensue') from an earlier excluded loss but are caused by a *covered* peril (e.g., a fire (covered) that ensues from faulty workmanship (excluded)).") (emphasis in original).

      Under the efficient proximate cause doctrine, which has been "incorporate[ed] into California law" by section 530 of the California Insurance Code ("Section 530"), " '[w]hen a loss is caused by a combination of a covered and specifically excluded risks, the loss is covered if the covered risk was the efficient proximate cause of the loss,' but 'the loss is not covered if the covered risk was only a remote cause of the loss, or the excluded risk was the efficient proximate, or predominate cause.' " *Julian v. Hartford Underwriters Ins. Co.* ("*Julian*"), 35 Cal. 4th 747, 750, 110 P.3d 903, 907 (2005), *as modified* (May 5, 2005) (citing *State Farm Fire & Casualty Co. v. Von Der Lieth*, 54 Cal.3d 1123, 1131–1132, 820 P.2d 285 (1992)). *See also Tento*, 222 F.3d at 663. The proximate cause " 'is the predominant, or most important cause of a loss.' " *John's*

ORDER RE CROSS MOTIONS FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 25-cv-04450-RS
8

*Grill, Inc. v. The Hartford Fin. Servs. Grp., Inc.*, 16 Cal. 5th 1003, 1017, 552 P.3d 1045, 1055 (2024) (citing *Julian*, 35 Cal. 4th at 754). The efficient proximate cause doctrine is an "an interpretive rule for first party insurance." *Julian*, 35 Cal. 4th at 750. "Policy exclusions are unenforceable to the extent that they conflict with section 530 and the efficient proximate cause doctrine." *Id.* at 754.

According to the California Supreme Court in *Julian*, to comport with the efficient proximate cause doctrine, coverage also should be " 'fair… within the reasonable expectations of both the insured and the insurer' " *Id.* at 754–55 (citing *Garvey v. State Farm Fire & Cas. Co.*, 48 Cal. 3d 395, 770 P.2d 704 (1989)). If "applying the exclusion to the facts of th[e] case [does not] bring[] about 'a fair result within the reasonable expectations of both the insured and the insurer,' " the exclusion creates "a threat of illusory insurance" and is not enforceable in that instance. *Julian*, 35 Cal. 4th at 761 (citing *Garvey,* 48 Cal. 3d at 404). On the other hand, the exclusion may be enforceable where "a reasonable insured would readily grasp the difference between a loss" that is covered and one that is not. *Id.* at 760-61.

### ii. Application

As discussed, the Policy here is an all-risk policy: it "insure[s] direct 'physical loss'" to Covered Property that occurs during the coverage term "unless the 'physical loss' is… [e]xcluded in Section I – Property Coverages, C. Section I - Exclusions" or "[l]imited in Section I.A.3.c. Special Limits of insurance." Dkt. 1-1, Ex. 1A, the Policy, Section I, B. The "Section I Exclusions" include the Defective Construction Exclusion. *Id.*, Section I, C.1.f. However, under the Ensuing Loss Provision, "[u]nder Section I, C. – Exclusions, Paragraphs 1. and 2., any ensuing 'physical loss' to Covered Property… not precluded by any other provision in this policy is covered." *Id.*, Section I, C.3.

Plaintiffs argue that the Ensuing Loss Provision provides coverage for the losses caused by the rainwater even if it entered through defective construction. Defendant disagrees, arguing that the Defective Construction Exclusion precludes coverage where defective construction was the proximate cause of the loss, as they argue it was here.

The first threshold question is whether there are two separate and distinct perils each which

ORDER RE CROSS MOTIONS FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 25-cv-04450-RS

could cause the damage at issue such that the ensuing loss provision and the efficient proximate cause doctrine are relevant. *Acme*, 221 Cal. App. 3d at 179–80 (Ensuing loss provisions apply "where there is a 'peril,'… *separate* and *independent* but resulting from the original excluded peril, and this new peril is not an excluded one, from which loss ensues."); *Tento*, 222 F.3d at 662 (Efficient proximate cause theory applies where there are "two separate or distinct perils which could each, under some circumstances, have occurred independently of the other and caused damage.") (cleaned up) (citing *Pieper v. Commercial Underwriters Ins. Co.,* 59 Cal.App.4th 1008, 1020, 69 Cal. Rptr.2d 551, 557 (1997)). Separate and distinct perils include a rupturing kettle and ensuing fire that damage equipment, *see Acme*, 221 Cal. App. 3d at 180 (discussing a hypothetical), pipe erosion and ensuing soil settling that disrupts a foundation, *see id.* at 179–80 (discussing *Murray v. State Farm Fire & Cas. Co.*, 219 Cal. App. 3d 58, 268 Cal. Rptr. 33 (Ct. App. 1990)), and a contractor leaving an opening in a roof and subsequent rain entering the home, *see Tento*, 222 F.3d at 662–63, but do not include moisture infiltration over time into stucco gaps and ensuing moisture and fungal damage, *see Sapiro v. Encompass Insurance*,[3] 221 F.R.D. 513, 522 (N.D. Cal. 2004).

Defendant argues that, as a matter of California law, water damage to the interior of a structure caused by specifically excluded defective construction cannot be a separate and independent peril, *see e.g.* Dkt. 21 at 8, 22–23, yet the cases Defendant relies on do not set out any such rule. In *Sapiro*, it was not a rain event but rather the gradual and natural consequences of the original peril, defective gaps in stucco roofing and siding, *over twenty-two years* that led to moisture infiltration. 221 F.R.D. at 515, 522. Thus, there was only one cause. In *Tento*, the Ninth Circuit *did find* the perils—a roofer's negligence in leaving an opening in the roof during repairs and subsequent rain—to be separate and distinct. F.3d at 662–63.

Here, the disputed causes are defective construction that allowed for water to leak into Plaintiffs' home and significant rainfall. Unlike *Sapiro*, the interior water damage was not the

---

[3] Plaintiffs' request for judicial notice of various filings related to motions to dismiss in *Sapiro*, *see* Dkt. 24, is denied.

ORDER RE CROSS MOTIONS FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 25-cv-04450-RS

consequence of natural and gradual moisture infiltration. Rather, just as in *Tento*, the rain and defective construction gaps are separate and distinct perils. *See Tento*, 222 F.3d at 662–63.

### 1. Proximate Cause

Defendant's argument that the Ensuing Loss Provision does not provide coverage where an excluded peril is the proximate cause and that, as a matter of California law, water damage to the interior of a structure caused by excluded defective construction cannot be the proximate cause of loss, *see e.g.* Dkt. 21 at 8, 11, 22–23, is not consistent with *Tento*, their reliance on the case notwithstanding. The efficient proximate cause " 'is the predominant, or most important cause of a loss.' " *John's Grill*, 16 Cal. 5th at 1017 (citing *Julian*, 35 Cal. 4th at 754). In *Tento*, as noted above, a contractor negligently left insureds' roof partially open, i.e., in such a state that in the case of any rain, there would be interior water damage. 222 F.3d at 662–63. It subsequently rained. *Id.* Even though the rain was the most immediate cause of damages, the contractor's negligence "was 'the predominating' or 'most important cause' of Tento's loss." *Id.*

By contrast, here, significant rain events occurred which can lead to damage even in the absence of defective construction. Further, the defective construction—improper waterproofing and improperly sealed fasteners around balcony railings—was not so certain to cause interior water damage or so egregious as leaving the roof open. *See id*. In light of the extreme nature of the rainfall and factual disputes[4] regarding the defective construction, it is not proper at this stage to find defective construction was the efficient proximate cause of any, let alone the entirety, of Plaintiffs' rainwater damages.

Ultimately, which cause is the proximate cause here is a genuine issue of material fact improper for resolution at this stage. *See e.g., Mission Nat'l Ins. Co. v. Coachella Valley Water Dist*., 210 Cal. App. 3d 484, 492, 258 Cal. Rptr. 639, 643 (Ct. App. 1989) (issue of whether design

---

[4] Plaintiffs argue that the factual record as to what extent defective construction caused the rainwater damage is underdeveloped in large part due to Defendant's initial determination that the damage was covered. That initial determination was undisturbed, as far as Plaintiffs knew, for twenty months, during which time further investigation—separate from that hired by Defendant— was not conducted. Now, both parties offer conflicting evidence about the amount of interior water damage attributable to the defective construction.

ORDER RE CROSS MOTIONS FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 25-cv-04450-RS
11

defect in flood control channel or flooding was proximate cause of damage to channel was question for jury in action to recover under all-risk builder's risk policy that included defective design exclusion); *Koepke v. Loo*, 18 Cal. App. 4th 1444, 1449–50, 23 Cal. Rptr. 2d 34, 37 (1993) ("In any event this issue, being a question of proximate cause, was a jury question which could not be decided as a matter of law by the trial court unless from the facts only one reasonable conclusion could be drawn."). Nevertheless, as discussed next, as a matter of law, the Ensuing Loss Provision cannot be read to exclude rainwater coverage in cases like this.

### 2. Interpretation of the Ensuing Loss Provision

Finding that the rainwater is not the proximate cause and precluding coverage under the Ensuing Loss Provision on this basis cannot be reconciled with the plain text of the Policy, the reasonable expectation of the parties, as established by common practice and the record, and, accordingly, the efficient proximate cause doctrine. When interpreting contract language and when applying the efficient proximate cause doctrine, the mutual intent of the parties controls. Cal Civ. Code § 1636; *Julian*, 35 Cal. 4th at 761 (citing *Garvey,* 48 Cal.3d at 404) (If "applying the exclusion to the facts of th[e] case [does not] bring[] about 'a fair result within the reasonable expectations of both the insured and the insurer,'" the exclusion creates "a threat of illusory insurance" and is not enforceable in that instance.).

The words of a contract are generally interpreted in their "ordinary and popular sense," *see* Cal. Civ. Code § 1644, and if the words are clear and explicit, "the parties' intention is determined from the writing alone," *see id.* §§ 1638, 1639. "If the terms of a promise are in any respect ambiguous or uncertain, it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it." *Id.* § 1649

In the cases discussed by the parties, the plain text of the policies guided the courts. In *Acme,* the court found that the ensuing loss provision would have covered separate and independent perils even if the perils were caused by an excluded loss (e.g., fire caused by a defective kettle). By contrast, in *Julian*, the California Supreme Court held that the ensuing loss

provision did not cover the at-issue landslide,[5] which ensued from rainfall, because it was otherwise excluded by the policy: the policy's plain language explicitly excluded damage from rain even if another—covered— cause "*contribute[d to the rain] in any way*." 35 Cal. 4th at 751-52 (emphasis added). In other words, any loss where rain was a cause—whether partial or proximate—would not be covered.

The Court held this outcome did not violate the efficient proximate cause doctrine because, "particularly given the direct and well-known relationship between rain and landslide, a reasonable insured would understand that the words 'contribute in any way with' connote an intention to exclude rain that induces a landslide" even with an applicable ensuing loss provision. *Id.* "Applying the exclusion to the facts of this case, therefore, [brought] about 'a fair result within the reasonable expectations of both the insured and the insurer.' " *Id.* at 761.

Similarly, in *Murray*, a policy's ensuing loss provision did not save the insured due to the clear text of the policy. Losses from a crack in the cement slab foundation, which ensued from a deteriorated pipe, were not covered under the ensuing loss provision because the ensuing peril itself, the cracking of the foundation, was excluded elsewhere in the policy. *Acme*, 221 Cal. App. 3d at 179–80 (citing *Murray*, 219 Cal. App. 3d 58).

Here, CIC does not argue that rainwater damage is excluded elsewhere in the policy but rather relies entirely on the combined meaning of the Defective Construction Exclusion and the Ensuing Loss Provision. In the same section as the Defective Construction Exclusion, the Ensuing Loss provision provides coverage for "any ensuing 'physical loss' to Covered Property… not precluded by any other provision in this policy." Dkt. 1-1, Ex. 1A, the Policy, Section I, B; *Id.* Section I, C.3. Accordingly, the language of the Ensuing Loss Provision has the plain meaning of

---

[5] The defendant in *Julian* moved for summary judgment on the ground that the policy excluded each of three perils identified as the possible efficient proximate cause of the loss—earth movement, third party negligence, and weather conditions, i.e. rain, that "contribute in any way with" another excluded cause or event, i.e. a landslide. *Id*. at 752. The Superior Court granted summary judgment, and the California Supreme Court affirmed, finding all three perils excluded. *Id.* at 761. Application of the weather condition exclusion, discussed here, was the harder question in part because of its interaction with an ensuing loss provision. The Court did not need to determine which cause was the proximate cause since it found all causes excluded by the policy.

ORDER RE CROSS MOTIONS FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 25-cv-04450-RS

excepting the Section I coverage exclusions even when an ensuing loss flows from a Section I coverage exclusion. As Plaintiffs' briefing points out, what else could it mean?

The Policy already "insure[s] direct 'physical loss' " to Covered Property "unless the 'physical loss' is… [e]xcluded in Section I – Property Coverages, C. Section I - Exclusions" or "[l]imited in Section I, A.3.c. Special Limits of insurance." *Id.*, Section I, B. Accordingly, if only ensuing perils are covered when they ensue from a covered harm, the Ensuing Loss Provision would be redundant with the all-risk language of the Policy or "illusory," as *Julian* warns against. *See Julian*, 35 Cal. 4th at 761.

Nonetheless, Defendant suggests that the Ensuing Loss Provision does not apply because perils ensuing from defective construction cannot be "ensuing losses," i.e. separate and proximate causes, by nature of having ensued from another peril. *See e.g.,* Dkt. 21 at 11 ("[T]he proximate cause of the interior damage at Plaintiffs' residence was not 'water,' but defects in workmanship / construction" because "instrumentalities that caused the interior damages were defects in construction that allowed rain to enter the home."); *id.* at 22–23 ("Under California law, water damage to the interior of a structure caused by specifically excluded defective construction is not an 'ensuing loss.' ") (citing *Tento*, 222 F.3d at 662). However, this belies plain meaning and common sense. For the Ensuing Loss Provision to have any additive meaning, it must provide coverage in some instances in which an ensuing peril flows from one of the Section I Exclusions.

Thus, the plain text is clear, and Defendant's interpretation "involve[s] an absurdity," *see* Cal. Civ. Code § 1638, that is not "reasonably susceptible" to the contractual language, *Guidiville Bank of Pomo Indians*, 531 F.3d at 787–88. However, if that were not so plainly the case, we would turn to common practice and past litigation to shed light on the parties' intent and thus the meaning of the Policy. *See id.* Both show that the parties likely did not expect coverage to be precluded whenever an otherwise covered peril ensues from an excluded peril.

For example, the Rutter Group's California Practice Guide on Insurance Litigation explains in no uncertain terms that an ensuing loss provision "operates as an *exception* to the [policies'] exclusions," "*restor[ing] coverage* for losses that flow ("ensue") from an earlier excluded loss but are caused by a *covered* peril (e.g., a fire (covered) that ensues from faulty

ORDER RE CROSS MOTIONS FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 25-cv-04450-RS

14

workmanship (excluded)).” California Rutter Practice Guide: Insurance Litigation Ch. 6B-F, Exclusions From Coverage (citing *Acme,* 221 Cal App. 3d at 179–180). Various other litigation in which Defendant's contrary interpretation of these and functionally similar provisions has lost out also put Defendant on notice that promisees, i.e., insureds, would have Plaintiffs' understanding of the Policy.[6]

Finally, it bears mention that Defendant's understanding of the parties' mutual intent has shifted in that, when its own initial determination was made, Defendant concluded that the Policy covered the rainwater damage as an ensuing peril. Defendant cites *State Farm Fire & Cas. Co. v. Superior Ct.* for the proposition that Defendant's payments to Plaintiffs are "irrelevant" to whether the policy covers their loss.[7] 206 Cal. App. 3d 1428, 254 Cal. Rptr. 543, 544 (Ct. App. 1988). However, that case addressed attorney-client privilege regarding "compromise payments," i.e. payments made without a concession of liability. *Id.* Here, Defendant made payments pursuant to an initial determination, expressly shared with Plaintiffs, that the loss was covered. *See* Dkt. 16-2, Cook Declaration, Ex. 9. Defendant's failure to provide the required interim updates per Cal. Code Regs. tit. 10 § 2695.7(c) after doing so once, further demonstrates that they considered the May 2023 Letter an official determination. *See id.*, Exs. 4, 9.

Since the Policy's language, common practice, related litigation to which Defendant is a party, and Defendant's own initial understandings of the Defective Construction Exclusion indicate the fair and reasonable expectation is coverage here, Defendant's current interpretation

---

[6] As Plaintiffs point out, Defendant has gone oh-for-three on its argument that the Policy does not cover water damage ensuing from excluded perils. In *Cincinnati Ins. Co. v. Ropicky*, 16 N.W.3d 634 (Wis. App. 2024), the Wisconsin Court of Appeals held that under a similar CIC policy, rainwater that entered the insured's home through a construction defect after a violent storm was a covered ensuing loss. While the cost to fix the defective construction was excluded, CIC's denial of the remainder of the claim as "faulty workmanship" was deemed a breach of CIC's policy. In *Arnold v. Cincinnati Ins. Co.*, 688 N.W.2d 708 (Wis. Ct. App. 2004), the same court held that CIC owed coverage under a similar policy for loss ensuing from rain that entered the home through caulking deterioration that was caused by a faulty power washer. In *Eckstein v. Cincinnati Ins. Co.*, 469 F.Supp.3d 455 (W.D. Ky. 2007), the court held that a functionally similar ensuing loss provision required coverage of loss from rainwater passing through defective construction.

[7] Defendant also makes this argument in its Objections to Evidence in Support of Cross-Motion for Partial Summary Adjudication and Opposition to Waytena's Motion for Summary Adjudication. *See* Dkt. 21-3.

cannot be adopted. Plaintiffs' motion for partial summary judgement as to their first cause of action, breach of contract, is granted with respect to coverage denial of losses caused by rainwater, and Defendant's is denied. Interior rainwater damage that enters a home through a construction defect in cases such as this is a covered "ensuing loss" under the Policy.

### B. The Policy Covers Increased Living Expenses Due to Fungi

Separate from rainwater damage, Plaintiffs also made a standalone insurance claim for "fungi" damage. Plaintiffs argue that Defendant wrongfully denied this claim for reasonable increases in living expenses based on fungi presence in their home. Defendant's argument that the denial was proper hinges on the same theory as before: that defective construction was the efficient proximate cause of the harm, and, thus, the living expenses at issue are not covered losses. *See* Dkt. 21 at 22–23. *See also id.* at 25 ("CIC's eventual denial of this claim was based upon the absence of a covered cause of loss - damage resulting from faulty construction or defective construction is expressly and unambiguously excluded by the Policy. This exclusion applies equally to the drywall, flooring, personal property, and the mold proliferation caused by water penetrating the building envelope."). As discussed, this argument fails. Defendant's denial of coverage on these grounds was improper.

### C. Leaking Sprinkler System

Neither party raises Plaintiffs' insurance claim based on a leaking sprinkler system, Dkt. 1-1 ¶¶ 122-128, in their opening motion. *See* Dkts. 17, 21. Yet, in Plaintiffs' Opposition to Defendant's MPSJ and in Defendant's Reply to Defendant's MPSJ, the parties dispute whether some interior water damage was caused by a leaking fire sprinkler rather than rainwater entering through defective construction. *See.* Dkt. 23 at 3-4; Dkt. 27 2-3. The Policy covers certain damage from leaking sprinklers, but not all. *See* Dkt. 1-1, Ex. 1A, Section I.C.1.c. (coverage for loss not otherwise excluded that results from automatic fire protective sprinkle system); *id.*, Section I.C.1.g. (excluding loss from constant or repeated seepage or leakage over a period of weeks, months, or years hidden from insured in the walls or ceilings); *id.*, Section I, C.1.f (the Defective Construction Exclusion).

Defendant "maintains" the damage was entirely caused by rainwater which leaked through defective construction, *see* Dkt. 21 at 24, and argues that, even if there were a dispute as to whether the sprinkler caused some of the damage, it would not be material, *see* Dkt. 27 at 3. However, it may be material: having found, as discussed above, that damage from the rainwater is covered, coverage may turn on whether damage was caused by sprinkler leakage or rainwater and if that leakage was of the kind covered by the Policy. Since the extent to which damage was caused by a leaking sprinkler rather than rainwater and the cause of that leakage are disputed issues of material fact, this Order only resolves whether the Policy covers the rainwater damage and related fungal damage. To the extent either parties' motion seeks summary judgment as to more, the motion is denied.

## V. CONCLUSION

Plaintiffs' motion for partial summary judgment as to their breach of contract claim for denial of coverage for interior rainwater damage and related fungal damage is granted, and Defendant's is denied.

**IT IS SO ORDERED**.

Dated: November 24, 2025

_____
RICHARD SEEBORG
Chief United States District Judge